## UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF ILLINOIS
### ROCK ISLAND DIVISION

LEROY WORKMAN, individually and on
behalf of all others similarly situated

Plaintiff,

Case No. 4:24-cv-04245-SLD

v.

**(Oral Argument Requested)**

DEERE & COMPANY

Defendant.

_____/

## **DEFENDANT DEERE & COMPANY'S MOTION TO DISMISS**

Defendant Deere & Company ("Deere"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), moves the Court for an order dismissing Plaintiff's Class Action Complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted.

### **Introduction and Summary of Argument**

This is Plaintiff Leroy Workman's second attempt at bringing this lawsuit. After filing a nearly identical complaint in the United States District Court for the District of South Carolina, receiving Deere's responsive motion to dismiss, and voluntarily dismissing that lawsuit shortly thereafter, Plaintiff evidently decided a change of venue suited his interests, and filed the instant action in this Court.

Mr. Workman purchased a Deere 2025R Compact Utility Tractor at some point between November 2017 and July 2024. Mr. Workman does not allege who he purchased the tractor from, when exactly he purchased his tractor, or the model year of his tractor. Mr. Workman also does not allege that he has ever had any trouble operating his tractor or that it caused him personal

injury, damage to his property, or lost profits. Nonetheless, Mr. Workman filed this lawsuit because he learned of a recall notice advising owners of certain Deere compact utility tractors that a part on their tractors needs to be replaced. The recall notice explained that Deere will provide a free repair either at authorized John Deere dealers or, if the customer is not able to transport the tractor to the dealer's location, at the customer's residence.

Mr. Workman wants more. Although he has apparently not suffered any injury, he demands compensatory, consequential, and punitive damages, as well as attorneys' fees. Moreover, he seeks to be made the lead plaintiff in a nationwide class action lawsuit on behalf of every person who purchased or leased a tractor of the subject model lines from 2017 to 2024, without regard to whether those individuals' tractors are subject to the recall or whether they have suffered cognizable damages.

Mr. Workman's complaint must be dismissed for several reasons. First, the Court lacks subject matter jurisdiction because Mr. Workman has failed to allege an injury-in-fact sufficient to give him standing under Article III of the United States Constitution. Second, Deere's recall has rendered Mr. Workman's claims prudentially moot. The entire Complaint should be dismissed for either or both of these reasons. Third, Mr. Workman also lacks standing to represent a nationwide class, even if he has Article III standing for his personal claims. His nationwide class claims must therefore be dismissed, even if other portions of his claims can survive dismissal.

Fourth, Mr. Workman has failed to state a cause of action as to any of the claims asserted in the complaint. His implied warranty of merchantability claim (Count I) must be dismissed because Deere disclaimed the warranty and because he fails to allege a cognizable breach of that warranty under South Carolina law. His unjust enrichment claim (Count II) fails because he has not alleged that he conferred a benefit upon Deere and because he has an adequate remedy at law

in the form of Deere's express warranty. His strict product liability claims (Counts III and IV) must be dismissed because they are prohibited by South Carolina's economic loss rule. Finally, Plaintiff's claims under the Magnuson-Moss Warranty Act (Count V) must be dismissed because Plaintiff failed to comply with MMWA's pre-suit notice-and-opportunity-to-cure provisions.

## **Pertinent Factual Allegations**[1]

On September 26, 2024, John Deere issued a product recall for approximately 148,000 compact utility tractors across three model lines that were sold between November 2017 and July 2024. Complaint (Doc. 1) ¶¶ 2, 5. The recall applies to certain serial number ranges of each respective model. *See* Complaint (Doc. 1) ¶¶ 2, 5, n. 1 (citing to the Consumer Product Safety Commission's webpage for the recall, which indicates that an owner can determine whether his or her tractor is subject to the recall by checking the serial number on the tractor). The recall relates to a component of the brake system called the front bell crank. Complaint (Doc. 1) ¶ 4. Under the recall, Deere will replace the subject component for free, either at an authorized dealership or at the tractor owner's home. Complaint (Doc. 1) ¶¶ 19, 24.

Plaintiff alleges that he purchased a model 2025R (one of model lines affected by the recall) compact utility tractor "within the applicable recall period." Complaint (Doc. 1) ¶ 15. However, the Complaint does not allege the model year of Plaintiff's tractor, whether Plaintiff's tractor's serial number falls within the range of serial numbers affected by the recall, where he purchased the tractor, or the identity of the person or business that sold him the tractor. *See generally* Complaint (Doc. 1). Nor does Plaintiff allege that he has attempted to avail himself of the recall remedy offered by Deere. *See generally* Complaint (Doc. 1). Further, the Complaint does not

---

[1] All facts discussed herein are derived from the Complaint and used only for the purposes of this motion to dismiss. The recitation of a particular fact alleged by Plaintiff is not an admission by Deere of that fact.

allege that Plaintiff suffered a personal injury, damage to his property, or lost profits as a result of the recall condition. *See generally* Complaint (Doc. 1). Rather, Plaintiff's alleged damages are that: 1) his tractor is "worthless" and its "resale value is now diminished"; and 2) he has been "inconvenienced by the recall and accompanying repairs." Complaint (Doc. 1) ¶¶ 53–55. *See also* Complaint (Doc. 1) ¶¶ 62, 71, 82, 91, 92 (restating variations on these two categories of alleged damages in each count in the Complaint).

Although the Complaint asserts a claim for violation of the Magnuson-Moss Warranty Act, it does not allege—or even attempt to allege—that Plaintiff complied with MMWA's conditions precedent to filing this suit. Specifically, Plaintiff did not provide Deere with a reasonable opportunity to cure the alleged violations of MMWA prior to filing suit, and also failed to provide pre-suit notice that he intended to bring claims on behalf of a putative class. *See generally* Complaint (Doc. 1).

## Argument

### I. *Standard on a motion to dismiss.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555. "Determining whether a complaint states a plausible claim for relief will . . . be a

context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in *Iqbal*).

## II.     *South Carolina law governs Plaintiff's substantive state law claims.*

Now that Plaintiff has refiled this action in Illinois rather than his home state of South Carolina, the Court should determine, as a threshold matter, whether Illinois or South Carolina substantive law governs his individual claims. In resolving choice-of-law questions, "[a] district court sitting in diversity must apply the choice of law principles of the forum state . . . to determine which state's substantive law governs the proceeding." *West Bend Mutual Insurance Co. v. Arbor Homes LLC*, 703 F.3d 1092, 1095 (7th Cir. 2013). For contractual, warranty, and unjust enrichment claims (*i.e.*, the kinds of claims covered by Counts I, II, and V of the Complaint), Illinois courts apply a multifactorial test to determine, essentially, which state has a more significant interest in the case. For tort claims (*i.e.*, counts III and IV) "the law of the place of injury controls unless another state has a more significant relationship with the occurrence and with the parties with respect to the particular issue." *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 164, 879 N.E.2d 893, 903 (2007).

"[T]he potentially relevant factors to choice of law in breach of contract cases are '(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties,' and these factors are to be 'evaluated according to their relative importance with respect to the particular issue.'" *Eclipse Mfg. Co. v.*

*U.S. Compliance Co.*, 381 Ill. App. 3d 127, 136, 886 N.E.2d 349, 358 (2nd Dist. 2007). "Illinois courts do not merely count these contacts but instead apply a more sophisticated interest analysis." *Malatesta v. Mitsubishi Aircraft Int'l*, 275 Ill. App. 3d 370, 379, 655 N.E.2d 1093, 1099 (1st Dist. 1995). "This interest analysis involves a three-step process: first to isolate the issue, next to identify the policies embraced in the laws in conflict, and finally to examine the contacts of the respective jurisdictions to ascertain which has a superior connection with the occurrence and thus would have a superior interest in having its policy or law applied." *Id.*, 275 Ill. App. 3d at 379–80, 655 N.E.2d at 1199 (internal quotation marks and quoted authorities omitted).

Applying these factors here, it is clear South Carolina has a stronger interest in Plaintiff's individual claims than Illinois. Plaintiff is domiciled in South Carolina, and the Complaint implies (though does not expressly state) that he purchased and used the subject tractor in South Carolina. Thus, any contract that would apply to this case would have been negotiated (if any negotiation occurred) and performed in South Carolina. Moreover, as noted in the Complaint, Deere has offered in-home repairs under the recall, which in Plaintiff's case would result in further performance in South Carolina. Against this, the only factor tying this case to Illinois is the fact that Deere's headquarters is in the state. This is not enough to overcome South Carolina's interest in governing Plaintiff's contractual and quasi-contractual claims.

The result is the same for Plaintiff's tort claims. Although Deere denies Plaintiff has any cognizable injury, any injury he may claim necessarily took place in South Carolina for the reasons discussed above. Nothing in the Complaint suggests that Illinois has a special countervailing interest in the claims or the parties sufficient to override the general rule of *lex loci delicti* embodied in Illinois's choice-of-law rules. Because South Carolina has a manifestly stronger interest in the outcome of Plaintiff's claims, South Carolina law should govern those claims.

**III.    Plaintiff lacks standing to bring his personal claims.**

   **a.   Plaintiff lacks Article III standing because he has not suffered a cognizable injury in fact.**

"Standing doctrine traces its origins to Article III of the Constitution, which grants federal courts the power to resolve 'Cases' and 'Controversies.'" *Dinerstein v. Google*, LLC, 73 F.4th 502, 511 (7th Cir. 2023) (citing U.S. Const. art. III, § 2). "The doctrine's elements are well established and familiar. To sue in federal court, a plaintiff must have suffered (1) a concrete, particularized, and actual or imminent injury (an 'injury in fact') (2) that is fairly traceable to the defendant and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Id.* (quoting *Warth v. Seldin*, 422 U. S. 490, 518 (1975)).

"To have standing to sue as a class representative, the plaintiff 'must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993) (quoting *East Tex. Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 403, (1977)). Because "standing is not dispensed in gross," dismissal of putative class action lawsuits is appropriate where the named plaintiff lacks standing. *Dinerstein*, 73 F.4th at 511 (7th Cir. 2023) (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208, 210 L. Ed. 2d 568 (2021) (affirming dismissal of class action complaint for lack of standing on the part of the named plaintiff (affirmance appears in 73 F.4th at 522–23))).

As a threshold issue, Plaintiff's complaint does not allege sufficient facts to plausibly allege that his particular tractor is actually subject to the recall. The recall condition affects only certain

model years and serial numbers of the subject tractor model lines, and Plaintiff does not allege that his tractor was manufactured in any particular model year or that he confirmed that his tractor falls within the affected serial number range. Rather, he alleges only that he purchased his tractor in the same time window that the recalled tractors were sold. This is not sufficient to plausibly allege that Plaintiff's tractor is subject to the recall. In the absence of a plausible allegation that Plaintiff's tractor is subject to the recall, Plaintiff has not pled an injury in fact, and therefore he lacks standing to sue under Article III.

Second, even if Plaintiff's tractor is subject to the recall, he has failed to plead cognizable damages because South Carolina law does not recognize diminution-in-value damages in situations where an alleged product defect has not manifested in the plaintiff's particular product, nor does it recognize inconvenience incurred during a warranty repair as an element of damages. For example, in *Carlson v. General Motors Corp.*, 883 F.2d 287 (4th Cir. 1989), the Fourth Circuit (applying South Carolina law) affirmed the dismissal of class action plaintiffs "who did not allege that they encountered engine difficulties with their own cars," but claimed lost resale value under an implied warranty of merchantability theory because of "'the poor reputation of the cars[, and] not from a manifest defect in any of the cars which have experienced no mechanical problems.'" *Id.* at 291, 297–98 (quoting the district court opinion from the same case). In reaching its decision, the Fourth Circuit rejected the plaintiffs' contention that "the implied warranty of merchantability encompasses 'loss of resale value' claims." *Id.* at 297. Instead, the Fourth Circuit held that "'merchantability' clearly does not encompass consumer expectations that a product will hold its value; and it is for this reason that several courts have rejected claims similar to [the plaintiffs']." *Id.* at 298. *See, also*, *Belville v. Ford Motor Co.*, 13 F. Supp. 3d 528, 535, 542 (S.D. W. Va. 2014)

(dismissing class action claims by plaintiffs whose products had not manifested the alleged defect and claimed damages based only on lost value) (citing *Carlson*, 883 F.2d at 289, 297–98).

Plaintiff's other alleged category of damages is "inconvenience" he may experience in the course of obtaining the recall repair. Inconvenience is not a cognizable injury in fact under South Carolina law. *Cannon v. Pulliam Motor Co.*, 230 S.C. 131, 139, 94 S.E.2d 397, 139 (1956) (holding that the plaintiff's "inconvenience" in traveling back and forth to a car dealership for warranty repair was not an element of damages: "The Court further erred in charging the jury that they could take into consideration inconvenience as an element of damages. No case has been cited and we find none sustaining such an instruction in a case of this kind."); *see also*, *Aaron v. Hampton Motors, Inc.*, 240 S.C. 26, 39, 124 S.E.2d 585, 591 (1962) ("Inconvenience is no more proper as an element of damage in such case than it would be in an action for breach of warranty." (citing *Cannon*)).

Here, Plaintiff does not allege that the front bell crank on his tractor actually failed; he alleges only that he may need to have it replaced pursuant to the recall. In the absence of a manifestation of the defect in his particular tractor, Plaintiff cannot recover diminution in value damages under South Carolina law. The only other category of damages Plaintiff alleges, inconvenience, is not available at all under South Carolina law. For these reasons, the Complaint does not allege facts sufficient to plausibly assert that Plaintiff has suffered an injury in fact. Plaintiff therefore lacks standing, and his complaint should be dismissed.

### b. Alternatively, the Court should dismiss the Complaint under the doctrine of prudential mootness because Deere's recall has mooted Plaintiff's claims.

"Even if constitutional standing is established, however, there are also prudential limitations of the court's exercise of jurisdiction." *G&S Holdings LLC v. Continental Casualty Co.*, 697 F.3d 534, 540 (7th Cir. 2012). Here, even if the Court determines that Plaintiff has alleged

sufficient factual matter to assert a cognizable injury in fact, it should nonetheless dismiss the complaint under the doctrine of prudential (sometimes called "equitable") mootness. "When there is no longer a case or controversy in the constitutional sense, an Article III court is without jurisdiction to adjudicate. Short of that, a case may become moot under 'a melange of doctrines relating to the court's discretion in matters of remedy and judicial administration.'" *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 841 F.2d 92, 95 (4th Cir. 1988) (quoting *Chamber of Commerce v. U.S. Dep't of Energy*, 200 U.S. App. D.C. 236, 627 F.2d 289, 291 (D.C. Cir. 1980)). "In particular, a court should avoid rendering a decision when it lacks the power to provide effective relief." *Cadle Co. II v. Calvert Vill. Ltd. P'shp. (In re Calvert Vill. Ltd. P'shp.)*, No. 99-1383, 2000 U.S. App. LEXIS 1306, at *5 (4th Cir. Feb. 2, 2000).

Federal courts in multiple jurisdictions have held that the prudential mootness doctrine applies to situations in which a product manufacturer issues a government-backed recall prior to or during suit. For example, in *Ward-Richardson v. FCA US LLC*, 690 F. Supp. 3d 1372, 1378 (N.D. Ga. 2023), the United States District Court for the Northern District of Georgia dismissed a class action lawsuit seeking both equitable and monetary relief relating to "the 'electrical and/or computer system' installed in the 2021 Jeep Wrangler" because the manufacturer recalled the subject products and promised to repair them. *Id.* at 1374–75, 1378. In doing so, the Northern District of Georgia noted multiple cases in which federal courts had dismissed similar product-recall claims under the doctrine of prudential mootness. *See id.* at 1377–79 (citing *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208 (10th Cir. 2012); *Sharp v. FCA US LLC*, 637 F. Supp. 3d 454 (E.D. Mich. 2022); and *Flores v. FCA US LLC*, 2020 U.S. Dist. LEXIS 222810, 2020 WL 7024850 (E.D. Mich. Nov. 30, 2020)).

Most of those courts dismissed claims under the prudential mootness doctrine because the recalls at issue were "carried out 'under the watchful eye' . . . a coordinate branch of government vested with the authority to monitor" the recalls. *See Ward-Richardson*, 690 F. Supp. 3d at 1380–81 (quoted); *see also Sharp*, 637 F. Supp. 3d at 464 (dismissing complaint where the subject products were the subject of a recall overseen by the National Highway Transportation Safety Administration); *Winzler*, 681 F.3d at 1210 ("However it comes about though, once the plaintiff has a remedial promise from a coordinate branch in hand, we will generally decline to add the promise of a judicial remedy to the heap."). However, not all courts applying the prudential mootness doctrine require a government-backed recall. In *Flores*, for example, the United States District Court for the Eastern District of Michigan applied prudential mootness to dismiss a recall class action even where the defendant was not under any statutory obligation to follow through on its promise to repair. *Flores*, 2020 U.S. Dist. LEXIS 222810, at *11.

Like the recalls in *Ward-Richardson*, *Winzler*, and *Sharp*, the recall in this case is being carried out "under the watchful eye" of an executive-branch agency with authority to monitor the recall—the Consumer Product Safety Commission. *See* Complaint (Doc. 1) at p. 2, n. 1 (citing the Consumer Product Safety Commission's webpage for the subject product recall)[2]. Although the Complaint does not specify which category of CPSC remedial action Deere's recall falls under, even the least stringent category—a corrective action plan under 16 C.F.R. § 1115.20—requires significant commitments from the manufacturer and reserves to the CPSC the right to take further

_____

[2] The Court may consider the CPSC's recall materials on this motion to dismiss: 1) because those materials are incorporated by reference into the complaint, *see, e.g.*, *Strow v. B&G Foods, Inc.*, 633 F. Supp. 3d 1090, 1100 n.1 (N.D. Ill. 2022) ("In considering a motion to dismiss, a court may consider 'documents attached to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to his claim.'" (quoting *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012)); and/or 2) by taking judicial notice of them, *see, e.g.*, *Demetry v. Lasko Prods.*, 284 F. App'x 14, 15–16 (4th Cir. 2008) (affirming dismissal of class action where the trial court took judicial notice of CPSC recall).

action if the CPSC "becomes aware of new facts or if the corrective action plan does not sufficiently protect the public." *Id.*

Plaintiff's speculative allegations that the recall repair will prove ineffective, *see* Complaint (Doc. 1) ¶ 20, are not a sufficient basis to defeat Deere's prudential mootness argument. *See, e.g.*, *Winzler*, 681 F.3d at 1211–12 ("To carry the burden of showing a 'cognizable danger' [exists], a plaintiff must point to 'something more than the mere possibility' of failure [of the proffered remedy].") (quoting *SEC v. Steadman*, 967 F.2d 636, 648 (D.C. Cir. 1992)); *Hadley v. Chrysler Grp., LLC*, 624 F. App'x 374, 380 (6th Cir. 2015) ("The plaintiffs' assertion that the [recall] repair may not be effective does not evidence an actual or imminent injury."). This is because the CPSC is monitoring the recall to ensure that Deere follows through with the promises it has made to consumers in the recall. *See, e.g.*, *Ward-Richardson*, 690 F. Supp 3d at 1381 ("The assurances provided by [the executive branch's] statutorily mandated oversight outweigh Plaintiffs' speculation that [the subject recall] will ultimately prove unsuccessful in correcting the challenged defect."). Here, the CPSC's authority, combined with Deere's recall assurances, provides Plaintiff with adequate relief for any cognizable damages he may have suffered. The Court should "decline to add the promise of a judicial remedy to the heap." *Winzler*, 681 F.3d at 1210.

**IV. Plaintiff lacks standing to bring claims on behalf of a putative nationwide class.**

"Those who represent a class must allege and show that they personally have been injured not that the injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Heater v. Gen. Motors, LLC*, 568 F. Supp. 3d 626, 644 (N.D.W. Va. 2021) (citing *In re Packaged Ice Antitrust Litig.*, 779 F.Supp.2d 642, 657 (E.D. Mich. 2011), and *Lewis v. Casey*, 518 U.S. 343, 347 (1996)) (internal quotation marks omitted).

In this case, the claims Plaintiff alleges are fundamentally state-law claims. All of his personal claims—even his MMWA claim[3]—will ultimately be resolved by reference to the laws of the State of South Carolina. None of his personal claims will be decided by referring to the laws of any other state. On the other hand, the overwhelming majority of members of Plaintiff's putative nationwide class who do not reside in South Carolina have no claim whatsoever under South Carolina law; their claims must be resolved by reference variously to the laws of the other 49 states. Plaintiff cannot bring as a class representative claims that the class members could not bring in their own individual capacities. *See*, *e.g.*, *In re Bridgestone/Firestone Tires Products Liability Litigation*, 288 F.3d 1012, 1015 (7th Cir. 2002) ("No class action is proper unless all litigants are governed by the same legal rules. Otherwise the class cannot satisfy the commonality and superiority requirements of Fed. R. Civ. P. 23(a), (b)(3). Yet state laws about theories such as those presented by our plaintiffs differ, and such differences have led us to hold that other warranty, fraud, or products-liability suits may not proceed as nationwide classes."); *Carpenter v. Petsmart, Inc.*, 441 F. Supp. 3d 1028, 1039 (S.D. Cal. 2020) ("there is no nationwide class because there is no claim that governs a nationwide class. . . . [W]hat Plaintiff is attempting to do here is assert fifty fraud by omission claims, fifty breach on implied warranty claims, and fifty unjust enrichment claims—one of each claim for each state—on behalf of fifty separate state-specific classes. . . ." Labeling the putative class as a 'nationwide class' does not overcome this fatal deficiency"). Accordingly, Mr. Workman's nationwide class claims must be dismissed.

---

[3] *See*, *e.g.*, *Carlson*, 883 F.2d at 291 (4th Cir. 1989) ("courts have in turn found it 'beyond genuine dispute that, as to both implied and written warranties, Congress intended the application of state law, except as expressly modified by Magnuson-Moss, in . . . breach of warranty actions.").

**V.** ***Plaintiff's implied warranty of merchantability claim must be dismissed because Deere properly disclaimed the warranty and because Plaintiff has failed to plausibly allege a breach of the warranty in any event.***

The first count of Plaintiff's substantive claims is for breach of the implied warranty of merchantability. This count fails to state a cause of action, and therefore must be dismissed, for at least two reasons. First, Deere disclaimed the implied warranty in the express warranty[4] it provides to purchasers of the subject tractors, and second, even if Plaintiff's merchantability claims can survive Deere's disclaimer, the allegations in the Complaint do not amount to a breach of the implied warranty of merchantability.

> *a.* ***Deere disclaimed all implied warranties in its express manufacturer's warranty.***

Under South Carolina's implementation of the Uniform Commercial Code, "to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous." S.C. Code Ann. § 36-2-316(2). Moreover, "unless the circumstances indicate otherwise, all implied warranties are excluded by specific language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty." S.C. Code Ann. § 36-2-316(3)(a). Where the manufacturer's written warranty contains a disclaimer of implied warranties including the word "merchantability" and is set off in block letters, "it satisfie[s] the statutory requirements to be effective." *Jenner Trucking & Constr., Inc. v. Pioneer Mach., LLC,*

---

[4] Plaintiff did not attach a copy of Deere's express warranty to the complaint. Nonetheless, Deere submits that the Court can consider the document on this motion to dismiss as a document that is indispensably incorporated by reference into the Complaint by virtue of Plaintiff's allegations, in particular the allegations of Count V, which seeks to allege a cause of action under the Magnuson-Moss Warranty Act, which, in turn, only applies where a manufacturer has provided a written express warranty. A copy of the express warranty is attached hereto as **<u>Exhibit 1</u>**.

No. 2011-UP-072, 2011 S.C. App. Unpub. LEXIS 63, at *4–5 (Ct. App. Feb. 23, 2011) (affirming summary judgment based in part on disclaimer of implied warranty of merchantability).

Here, Deere's disclaimer appears in a separate section of the written warranty with a title indicating the section contains a disclaimer of implied warranties, (section "**E. NO IMPLIED WARRANTY, REPRESENTATION OR CONDITION**"). The disclaimer itself provides, in pertinent part, as follows:

> To the extent permitted by law, neither John Deere nor any company affiliated with it makes any warranties, representations, conditions or promises express or implied as to the quality, performance or freedom from defect of the Equipment covered by these warranties other than those set forth above, AND NO STATUTORY OR IMPLIED WARRANTIES OR CONDITIONS OF MERCHANTABILITY OR FITNESS ARE MADE.

**Exhibit 1**, p. 2. As required by the statute, Deere's disclaimer of implied warranties is conspicuous, separate from the rest of the warranty, expressly references merchantability, and uses language that "makes plain that there is no implied warranty." This disclaimer plainly satisfies the requirements of S.C. Code Ann. § 36-2-316(3)(a).

Plaintiff may retort that he has alleged a count under the Magnuson-Moss Warranty Act, which prohibits disclaimers of implied warranties. The problem plaintiff faces, which will be discussed in greater detail below, is that his MMWA count fails to allege a cause of action because he has not complied with the statutory pre-suit requirements for raising such a claim. In particular, Plaintiff does not allege that he provided Deere with a reasonable opportunity to cure the alleged failure to comply with the Act—because he provided no such opportunity. Because the MMWA count must be dismissed for the reasons discussed in greater detail below, Plaintiff cannot avoid Deere's disclaimer of the implied warranty of merchantability, and the Court should dismiss his claim for breach of that warranty.

### a. *Plaintiff has failed to allege facts amounting to a breach of the implied warranty of merchantability.*

Even if Deere's disclaimer of the warranty of merchantability is not a basis for dismissal at this time, Plaintiff's merchantability count must still be dismissed because he has not alleged facts that amount to a breach of that warranty under South Carolina law.

Under South Carolina's version of the Uniform Commercial Code, for goods to satisfy the implied warranty of merchantability, they "must be at least such as":

(a) pass without objection in the trade under the contract description; and
(b) in the case of fungible goods, are of fair average quality within the description; and
(c) are fit for the ordinary purposes for which such goods are used; and
(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
(e) are adequately contained, packaged, and labeled as the agreement may require.

S.C. Code Ann. § 36-2-214. "'[M]erchantability' clearly does not encompass consumer expectations that a product will hold its value; and it is for this reason that several courts have rejected claims similar to those pressed here." *Carlson*, 883 F.2d at 298 (citing *Yost v. Gen. Motors Corp.*, 651 F. Supp. 656, 657–58 (D.N.J. 1986); *Feinstein v. Firestone Tire & Rubber Co.*, 535 F. Supp. 595, 602 (S.D.N.Y. 1982); and *Skelton v. Gen. Motors Corp.*, 500 F. Supp. 1181, 1191–92 (N.D. Ill. 1980)); *see also Wilson v. Style Crest Prods.*, 367 S.C. 653, 657–58; 627 S.E.2d 733, 736 (2006) (holding that plaintiffs had not pled a breach of the implied warranty of merchantability in the absence of any manifestation of the alleged defect).

In this case, Plaintiff does not allege that the recall condition affecting the front bell crank manifested in his particular tractor. He does not allege that he suffered any personal injury, property damage, or lost profit as a result of a defective front bell crank. He alleges only that his tractor is diminished in value because of the recall, and that he may suffer inconvenience in the course of having his tractor go through the recall repair process. These are not breaches of the

implied warranty of merchantability. In the absence of a plausible allegation of a breach of the warranty, Count I must be dismissed.

**VI.** ***Plaintiff's unjust enrichment claim must be dismissed because he fails to plausibly allege that he has conferred a benefit upon Deere and because he otherwise has an adequate remedy at law.***

Plaintiff's second count is for unjust enrichment. This count fails to state a cause of action because: 1) it fails to allege that Plaintiff conferred a benefit upon Deere; and 2) Plaintiff has adequate remedies at law in the form of Deere's express warranty and the recall process.

**a. *The Complaint fails to plausibly allege that Plaintiff conferred a benefit upon Deere.***

"Absent an express contract, recovery under quantum meruit is based on quasi-contract, the elements of which are: (1) a benefit conferred upon the defendant by the plaintiff; (2) realization of that benefit by the defendant; and (3) retention by the defendant of the benefit under conditions that make it unjust for him to retain it without paying its value. *Columbia Wholesale Co. v. Scudder May N.V.*, 312 S.C. 259, 261, 440 S.E.2d 129, 130 (1994). "The South Carolina Supreme Court defines benefits as 'goods or services.'" *Quintech Sec. Consultants, Inc. v. Intralot USA, Inc.*, Civil Action No. 2:11-cv-01689-PMD, 2011 U.S. Dist. LEXIS 124895, at *12 (D.S.C. Oct. 27, 2011) (quoting *Gignilliat v. Gignilliat*, 385 S.C. 452, 684 S.E. 2d 756, 764 (2009)).

Although the Complaint contains a threadbare recital of the elements of unjust enrichment, it fails to allege sufficient facts to plausibly allege even the first element of the claim. This is because the Complaint does not allege when Plaintiff purchased the tractor, from whom he purchased it, or where he purchased it. Without these basic facts, he cannot plausibly allege that he conferred a benefit upon Deere. It would have been trivially simple for Plaintiff to make such

an allegation if it were true, but he failed to do so. For example, in the pertinent paragraph of the Complaint (paragraph 58), Plaintiff might have alleged this:

> Plaintiff purchased a model 2025R compact utility tractor subject to the recall from Deere on _____ date and paid Deere _____ dollars, thereby conferring a benefit upon Deere.

Instead, he wrote this:

> Plaintiff, and the other members of the Class, conferred benefits on Defendant in the form of monies paid to purchase Defendant's worthless Class Tractors.

Complaint (Doc. 1) ¶ 58. The problem with the latter is that it does not allege that Plaintiff—or anyone in the putative class—purchased a recalled tractor *from Deere*. Instead, through careful use of passive phrasing ("in the form of monies paid to purchase") Plaintiff attempts to plead his claim without actually alleging that he purchased his tractor from Deere. Presumably, Plaintiff chose this careful phrasing because he could not truthfully make the simple allegation that he bought his tractor from Deere. While the allegations in the Complaint leave room for the mere possibility that Plaintiff conferred a benefit upon Deere by purchasing his tractor from Deere, they also leave it equally possible that Plaintiff purchased his tractor from a non-party—*i.e.*, an independent dealer, retailer, or reseller. This does not satisfy Rule 12 post-*Iqbal* and *Twombly*. The Complaint is simply devoid of factual matter that, if proven, would show that Plaintiff conferred a benefit upon Deere.

### b. The Complaint fails to state a cause of action for unjust enrichment because Plaintiff has adequate remedies at law.

"Where a plaintiff has an adequate remedy at law, equitable relief is not normally in order." *Barrett v. Miller*, 283 S.C. 262, 264, 321 S.E.2d 198, 199 (Ct. App. 1984) (citing 27 Am. Jur. (2d) Equity, § 87) (reversing order permitting unjust enrichment claim for betterment to real property where statutory remedy applied). "[E]quity is only available when a party is without an adequate remedy at law." *EllisDon Constr., Inc. v. Clemson Univ.*, 391 S.C. 552, 555, 707 S.E.2d 399, 401

(2011). "A party failing to fulfill the requirements of its legal remedy cannot later come to the courts complaining of hardship, seeking an equitable remedy." *Id.* (affirming judgment denying equitable award of prejudgment interest where plaintiff had not availed itself of statutory remedy).

A contractual agreement is an adequate remedy under South Carolina law. *See*, *e.g.*, *Nutt Corp. v. Howell Rd., LLC*, 396 S.C. 323, 328, 721 S.E.2d 447, 450 (Ct. App. 2011) ("First, we find a remedy at law was available because there was a contractual agreement between the parties."); *Milliken & Co. v. Morin*, 386 S.C. 1, 9, 685 S.E.2d 828, 833 (Ct. App. 2009) (holding that plaintiff's damages on breach of contract claim were an adequate remedy at law and that plaintiff was not entitled to additional equitable relief); and *Palmetto Health Credit Union v. Open Sols. Inc.*, No. 3:08-cv-3848-CMC, 2010 U.S. Dist. LEXIS 67768, at *12–13 (D.S.C. July 7, 2010) ("Recovery under a theory of unjust enrichment is available only where the rights and responsibilities at issue are not governed by an express contract."). "[A]n adequate legal remedy may [also] be provided by statute." *Key Corp. Capital, Inc. v. Cnty. of Beaufort*, 373 S.C. 55, 61, 644 S.E.2d 675, 678 (2007) (citing *Santee Cooper Resort, Inc. v. S.C. Pub. Serv. Comm'n*, 298 S.C. 179, 185, 379 S.E.2d 119, 123 (1989).

Here, Plaintiff has at least two adequate remedies at law. First, he has an express contractual remedy in the form of Deere's express warranty: "John Deere will repair or replace, at its option, any part covered under these warranties which is found to be defective in material or workmanship during the applicable warranty term." **Exhibit 1** at p. 1. "Warranty service will be performed without charge to the purchaser for parts and/or labor." **Exhibit 1** at p. 1. The fact that Plaintiff has not pled a count for breach of express warranty does not negate the fact that the warranty provides him with an adequate legal remedy.

Second, Plaintiff also has available to him the recall remedy, which is enforced by the CPSC. Deere's remedial promise, enforced by a coordinate branch of government pursuant to federal statute, is an adequate remedy at law. As discussed previously, even the least stringent category of CPSC-monitored recalls—a corrective action plan under 16 C.F.R. § 1115.20— requires significant commitments from the manufacturer and reserves to the CPSC the right to take further action if the CPSC "becomes aware of new facts or if the corrective action plan does not sufficiently protect the public." *Id.* This remedy, enforced by a coordinate branch of the federal government, is more than adequate.

Because Plaintiff has failed to plead factual matter that plausibly supports his claim that he conferred a benefit on Deere, and because he has adequate remedies at law, his claim for unjust enrichment must be dismissed.

## VII. *Plaintiff's strict product liability claims must be dismissed because they are barred by South Carolina's economic loss rule.*

Counts III and IV of the Complaint allege claims for strict liability design and manufacturing defects, respectively. "Under the [economic loss] rule, there is no tort liability for a product defect if the damage suffered by the plaintiff is only to the product itself." *Sapp v. Ford Motor Co.*, 386 S.C. 143, 147, 687 S.E.2d 47, 49 (2009). "In other words, tort liability only lies where there is damage done to other property or personal injury." *Id.* (citing *Kennedy v. Columbia Lumber & Mfg. Co.*, 299 S.C. 335, 341, 384 S.E.2d 730, 734 (1989)). "Accordingly, where a product damages only itself, tort law provides no remedy and the action lies in contract[.]" *Sapp*, 386 S.C. at 147, 687 S.E.2d at 49.

Here, the Complaint is devoid of any allegation that Plaintiff's tractor caused personal injury or damage to property other than the tractor itself. *See generally* Complaint (Doc. 1).

Plaintiff's strict liability claims are precisely the kind that South Carolina's economic loss rule forbids.

In an apparent attempt to circumvent the economic loss rule, Plaintiff pleads as non-economic damages "emotional distress, inconvenience, [and] loss of enjoyment[.]" Complaint (Doc. 1) ¶ 71. (Though Count III for design defect is the only count in the Complaint for which emotional distress and "loss of enjoyment" are pled.) As discussed previously herein, "inconvenience" is not a recognized category of damages under South Carolina law. *See Cannon*, 230 S.C. at 139, 94 S.E.2d at 139. Plaintiff has not pled any facts that would support recovery for emotional distress. *See*, *e.g.*, *K.S. v. Richland Sch. Dist. Two*, No. 2022-UP-312, 2022 S.C. App. Unpub. LEXIS 390, at *7–8 (Ct. App. July 27, 2022) (noting that South Carolina currently recognizes negligent infliction of emotional distress in three contexts: 1) "in the 'bystander' context—when a plaintiff observes a defendant's negligence cause the death or serious injury of a relative[;]" 2) "when a plaintiff suffers emotional distress in addition to physical injuries[;]" and 3) "when emotional trauma proximately causes bodily injury.").

Likewise, Plaintiff has not pled facts to support "loss of enjoyment" damages, which "compensate for the limitations, resulting from the defendant's negligence, on the injured person's ability to participate in and derive pleasure from the normal activities of daily life, or for the individual's inability to pursue his talents, recreational interests, hobbies, or avocations." *Boan v. Blackwell*, 343 S.C. 498, 502, 541 S.E.2d 242, 244 (2001). It is difficult to imagine how Plaintiff could have suffered such damages in the absence of personal injury, which he has not alleged.

Because Plaintiff's claims are barred by the economic loss rule, Counts III and IV must be dismissed.

**VIII.** *Plaintiff's Magnuson-Moss Warranty Act claim must be dismissed because Plaintiff did not comply with MMWA's pre-suit notice-and-opportunity-to-cure requirements.*

Plaintiff's final count is for violation of the Magnuson-Moss Warranty Act. Under MMWA, a consumer who is damaged by a supplier or warrantor's failure to comply with the statute can bring a civil action for damages. 15 U.S.C. § 2310(d)(1). However,

> No action (other than a class action or an action respecting a warranty to which subsection (a)(3) applies) may be brought under subsection (d) for failure to comply with any obligation under any written or implied warranty or service contract, and a class of consumers may not proceed in a class action under such subsection with respect to such a failure except to the extent the court determines necessary to establish the representative capacity of the named plaintiffs, **unless the person obligated under the warranty or service contract is afforded a reasonable opportunity to cure such failure to comply**. In the case of such a class action . . . brought under subsection (d) for breach of any written or implied warranty or service contract, such reasonable opportunity will be afforded by the named plaintiffs **and they shall at that time notify the defendant that they are acting on behalf of the class**. In the case of such a class action which is brought in a district court of the United States, the representative capacity of the named plaintiffs shall be established in the application of rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 2310(e) (emphasis added). "Whether a plaintiff has provided notice and reasonable opportunity to cure are questions of fact that ordinarily must be determined by the trier of fact, but may be decided as a matter of law when the facts are undisputed and only one inference can be drawn as to the reasonableness of the notice." *Butcher v. DaimlerChrysler Co.*, No. 1:08CV207, 2008 U.S. Dist. LEXIS 57679, at *11 (M.D.N.C. July 29, 2008) (citing *Hebron v. Am. Isuzu Motors, Inc.*, 60 F.3d 1095, 1098 (4th Cir. 1995)).

Where a complaint fails to allege that the plaintiff provided adequate notice and opportunity to cure under MMWA, dismissal is warranted. *See, e.g.*, *Gibson v. Albertsons Co.*, No. 22 CV 642, 2024 U.S. Dist. LEXIS 189025, at *37 (N.D. Ill. Oct. 17, 2024) (dismissing MMWA claim where Plaintiff mailed notice just four days before filing suit); *Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF (PVT), 2009 U.S. Dist. LEXIS 112971, at *33 (N.D. Cal.

Dec. 4, 2009) (dismissing MMWA class action where plaintiffs "failed to allege that they provided adequate notice to [the defendant] that they were acting on behalf of the class prior to filing suit"); *Bearden v. Honeywell Int'l, Inc.*, 720 F. Supp. 2d 932, 936–37 (M.D. Tenn. 2010) (dismissing MMWA class action because "the plain text of § 2310(e) reveals that notice must be given *before* the suit is filed—the statute states that '[n]o action . . . may be brought' unless the plaintiff complies with the given requirements" (emphasis in original)).

However, notwithstanding the plain language of the statute, some district courts have held that a plaintiff bringing a class-action MMWA claim need not comply with the notice-and-opportunity-to-cure requirement prior to filing suit, but rather can file suit first and then comply with the requirements prior to proceeding with the class claim. *See*, *e.g.*, *In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*, 880 F. Supp. 2d 801, 824–25 (S.D. Ohio 2012) (holding that section 2310(e) permits the filing of class action MMWA claims prior to issuance of notice and opportunity to cure by plaintiff). Deere has not been able to identify any case from the Seventh Circuit, nor any other circuit court of appeals, deciding a case on this issue. *But see*, *Walsh v. Ford Motor Co.*, 257 U.S. App. D.C. 85, 807 F.2d 1000, 1004 (1986) (in which the United States Court of Appeals for the Federal Circuit discussed MMWA's class action procedures in the context of whether they override Federal Rule of Civil Procedure 23's requirement to provide individual notice to all class members).

Deere respectfully submits that the cases requiring pre-suit notice and reasonable opportunity to cure under Section 2310(e) are better reasoned and better reconcile the Federal Rules of Civil Procedure with the statutory scheme of MMWA. To begin, Deere notes that the statute is plain with regard to individual claimants like Plaintiff: they must provide a "reasonable opportunity to cure" the alleged violation of MMWA before bringing—that is to say, before

filing—the action. 15 U.S.C. § 2310. Even the cases that treat class actions differently acknowledge this point. *See*, *e.g.*, *In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*, 880 F. Supp. 2d at 824 ("For individual plaintiffs, Section 2310(e) is a condition precedent to filing suit[.]"); *In re Lumber Liquidators Chinese-Manufactured Flooring Durability Mktg. & Sales Practice Litig.*, No. 1:16md2743 (AJT/TRJ), 2017 U.S. Dist. LEXIS 105335, at *48 (E.D. Va. July 7, 2017) ("[N]one of the Representative Plaintiffs provided pre-suit notice or an opportunity to cure; and it would initially appear that having found Plaintiffs' allegations inadequate for the purposes of their state law breach of warranties claims, their MMWA claims would likewise need to be dismissed.").

The class action provision of MMWA modifies this basic requirement only slightly:

> In the case of such a class action (other than a class action respecting a warranty to which subsection (a)(3) applies) brought under subsection (d) for breach of any written or implied warranty or service contract, **such reasonable opportunity** will be afforded by the named plaintiffs and they shall at that time notify the defendant that they are acting on behalf of the class.

15 U.S.C. § 2310(e) (emphasis added). In this sentence, "such reasonable opportunity" is a direct reference to the *pre-suit* obligation to provide a reasonable opportunity to cure the alleged violation of MMWA. In other words, what MMWA permits is for a would-be named plaintiff to provide notice of an alleged violation and a reasonable opportunity to cure on behalf of the class, in lieu of requiring each potential class member to provide such notice individually. Nothing in this part of the statute relieves the would-be named plaintiff of the obligation to provide this notice before bringing his action.

In addition to being better-aligned with the plain meaning of the statutory language, this interpretation also better serves the function of the notice-and-opportunity-to-cure requirement— resolution of potential MMWA claims without the need for judicial intervention and management.

To hold otherwise is to invite plaintiffs to file class action suits with the intent to immediately request the Court hold those suits in abeyance until those plaintiffs can establish class standing and comply with what otherwise would be a condition precedent to filing suit in the first place. This unwieldy process would be repugnant to the plain meaning and manifest intent of the statute, which is to reduce, not increase, the judicial workload involved in resolving MMWA claims. The simpler, better, and more faithful interpretation is that MMWA requires all plaintiffs—even those bringing claims on behalf of a class—to comply with the notice-and-opportunity-to-cure requirement before filing suit.

Here, the Complaint fails to satisfy either of the conditions precedent to filing this lawsuit contained in 15 U.S.C. § 2310(e). Plaintiff does not allege that he, individually, provided Deere a reasonable opportunity to cure the alleged violation. *See generally* Complaint (Doc. 1). Nor does he allege that he gave Deere notice of his intent to act on behalf of a class prior to filing suit. *See generally* Complaint (Doc. 1). Indeed, the Complaint is devoid of any allegation that Plaintiff gave Deere notice of his claims—whether individual or class-based—of any kind. *See generally* Complaint (Doc. 1). Plaintiff simply ignored the conditions precedent to the filing of his MMWA claim. As a result, the claim must be dismissed.

### Conclusion

For the reasons discussed herein, Plaintiff's complaint should be dismissed.

### Request for Oral Argument

Pursuant to local rule 7.1(A), Deere requests oral argument on this motion because it believes such argument will assist the parties in fully developing the particular issues the Court determines are most pertinent to its decision.

**MURPHY & ANDERSON, P.A.**

_/s/ Niels P. Murphy_

**NIELS P. MURPHY (lead counsel)**
Florida Bar No.: 0065552 (local admission application pending)
nmurphy@murphyandersonlaw.com
acook@murphyandersonlaw.com
**JORDAN M. JANOSKI**
Florida Bar. No.: 112561 (local admission application pending)
jjanoski@murphyandersonlaw.com
lcarr@murphyandersonlaw.com
1501 San Marco Boulevard
Jacksonville, Florida 32207
(904) 598-9282 (phone)
(904) 598-9283 (fax)

And

**BOZEMAN, NEIGHBOR, PATTON, & NOE, LLP**
**JEFFREY D. MARTENS**
Illinois ARDC No.: 6225553
jmartens@bnpn.com
**DANIEL F. HARDIN**
Illinois ARDC No.: 6309192
dhardin@bnpn.com
1620 Fifth Avenue Suite 101
Moline IL 61265
(309) 797-0850 (Phone)
(309) 524-3488 (Fax)
_Attorneys for Defendant Deere & Company_

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2025, a copy of the foregoing was served on the following by filing with the Court's electronic filing system:

**POULIN WILLEY ANASTOPOULO**
**PAUL J. DOOLITTLE**
Fed. ID No.: 6012
paul.doolittle@poulinwilley.com
cmad@poulinwilley.com
32 Ann Street
Charleston, SC 29403

Telephone: (803) 222-2222
Fax: (843) 494-5536
and

**<u>HASSAKIS & HASSAKIS, P.C.</u>**
**JAMES M. RUPPERT, ESQ.**
Fed. ID No.: 6313872
james@hassakislaw.com
**PAUL H. RADEMACHER, ESQ.**
Fed ID No.: 6324529
paul@hassakislaw.com
206 S 9th St Ste 201
Mt Vernon, IL 62864
Telephone: (618) 244-5335
Fax: (618) 244-5330
*Attorneys for Plaintiff Leroy Workman*

*/s/ Niels P. Murphy*
Attorney

Exhibit 1

# WARRANTY FOR NEW JOHN DEERE AGRICULTURAL EQUIPMENT AND
# LIMITED WARRANTY FOR NEW TURF & UTILITY EQUIPMENT (US & CANADA ONLY)

**A. GENERAL PROVISIONS –** With respect to purchasers in the United States, "John Deere" means Deere & Company, 1 John Deere Place, Moline, IL 61265, and with respect to purchasers in Canada, "John Deere" means John Deere Canada ULC, 295 Hunter Road, P. O. Box 1000, Grimsby, Ontario L3M 4H5. The warranties described below are provided by John Deere to the original purchasers of new Agricultural, Turf and Utility Equipment ("Equipment") purchased from John Deere or authorized John Deere dealers (the "Selling Dealer"). These warranties apply only to Equipment intended for sale in Canada and the US. Under these warranties, John Deere will repair or replace, at its option, any part covered under these warranties which is found to be defective in material or workmanship during the applicable warranty term. Warranty service must be performed by a dealer or service center located in Canada or the US, and authorized by John Deere to sell and/or service the type of Equipment involved (the "Authorized Dealer"). The Authorized Dealer will use only new or remanufactured parts or components furnished or approved by John Deere. Warranty service will be performed without charge to the purchaser for parts and/or labor. However, the purchaser will be responsible for any service call and/or transportation of Equipment to and from the Authorized Dealer's place of business (except where prohibited by law), for any premium charged for overtime labor requested by the purchaser and for any service and/or maintenance not directly related to any defect covered under these warranties. These warranties are transferable, provided an authorized John Deere dealer is notified of the ownership change, and John Deere approves the warranty transfer.

**B. WHAT IS WARRANTED –** Subject to paragraph C, all parts of any new Equipment are warranted for the number of months or operating hours specified below. Each warranty term begins on the date of delivery of the Equipment to the original purchaser, (except for certain agricultural tillage, planting, cultivating, harvesting, and application Equipment which may have a delayed warranty start date, but only if established by John Deere and noted by Selling Dealer on the Purchase Order). **Included In 5E Series Tractor and Compact Utility Tractor Powertrain Warranty - Engine:** cylinder block, cylinder head, valve covers, oil pan, emissions control components, timing gear covers, flywheel housing, and all parts contained therein. **Powertrain:** transmission, transmission case, differential and axle housings, clutch housings, MFWD front axle assembly, and all parts contained therein (does not include external drivelines, dry clutch parts, or steering cylinders). SWEEPS, SHOVELS, PLOWSHARES, AND DISK BLADES: A replacement part will be furnished without charge if breakage occurs and the amount of wear is less than the wear limits established by John Deere.

| AGRICULTURAL EQUIPMENT | WARRANTY TERM |
|---|---|
| Tractors | 24 Months or 2000 Hours, Whichever Comes First |
| Tractors used in Heavy Duty Land Leveling applications exceeding 150 hours per year | 90 Days |
| 9R Series Tractors factory equipped with Option 0574 used in Heavy Duty Land Leveling applications less than half of the annual usage | 24 Months or 2000 Hours, Whichever Comes First |
| 9R Series Tractors factory equipped with Option 0574 used in Heavy Duty Land Leveling applications exceeding half of the annual usage | 90 Days |
| Scraper Special Tractors | 24 Months or 2000 Hours, Whichever Comes First |
| 5E Series Tractors<br>a) Powertrain on 5E Series Tractors (components as per B above) | 24 Months or 2000 Hours, Whichever Comes First<br>a) 60 Months or 2000 Hours, Whichever Comes First |
| Scrapers | 6 Months for MY14 and earlier<br>12 Months for D Series and MY15 and later |
| Frontier™ Equipment | 12 months |
| Sugar Cane Harvesters and Loaders | 12 months or 1500 Hours, Whichever Comes First |
| All other Equipment (includes Ag Management Solutions (AMS) products) | 12 Months |
| Premium Round Balers 469, 569, 450R, 460R, 560R | 24 Months or 12,000 bales, Whichever Comes First; First 12 Months, No Bale Limitation |
| Large Square Balers<br>a) Powertrain on Large Square Balers | 12 Months, No Bale Limitation<br>a) 24 Months or 20,000 bales, Whichever Comes First |
| Hagie Manufacturing Company LLC Sprayers and Detasselers | 24 Months or 1000 Hours, Whichever Comes First |
| Engines in Self-Propelled Equipment except Tractors* | 24 Months or 2000 Hours, Whichever Comes First |

\*Engine Items Covered in months 13 through 24 – Engine block, cylinder head, rocker arm cover, timing gear cover, crankcase pan and all parts enclosed within these units. Also included are the fuel injection pump, turbocharger, water pump, torsion damper, manifolds, and engine oil cooler. All other engine related items are not covered in months 13 through 24.

| TURF & UTILITY EQUIPMENT | WARRANTY TERM |
|---|---|
| 1) Z425 EZtrak™ Mowers, Z300 Series and Z525E ZTrak™ Mowers, and 100 Series Tractors** | 24 Months or 120 Hours, Whichever Comes First |
| 2) 200 Series Tractors** | 36 Months or 200 Hours, Whichever Comes First |
| 3) X300 Series Tractors; Z400 Series EZtrak™ Mowers, Z515E and Z500M Series ZTrak™ Mowers (Except Z425 and Z525E)** | 48 Months or 300 Hours, Whichever Comes First |
| 4) X500 Series Tractors; Z700E and Z500M Series ZTrak™ Mowers** | 48 Months or 500 Hours, Whichever Comes First |
| 5) X700 Series Tractors** | 48 Months or 700 Hours, Whichever Comes First |
| 6) Z700M Series ZTrak™ Mowers** | 48 Months or 750 Hours, Whichever Comes First |
| 7) Z700R Series ZTrak™ Mowers** | 48 Months or 1000 Hours, Whichever Comes First |
| 8) JS Series Residential Walk-Behind Mowers | 24 Months in Private Residential – Personal Use or 90 Days in Any Other Application |
| 9) Wide Area Mowers, Front Mower Traction Units and Mower Decks, QuikTrak™ Mowers, Commercial Walk Behind Mowers | 24 Months |
| 10) Z900B, Z900E, and Z900M Series ZTrak™ Mowers | 36 Months or 1200 Hours, Whichever Comes First; First 24 Months, No Hour Limitation |
| 11) Z997, Z900A Series and Z900R Series ZTrak™ Mowers | 36 Months or 1500 Hours, Whichever Comes First; First 24 Months, No Hour Limitation |
| 12) Compact Utility Tractors<br>a) Powertrain on Compact Utility Tractors (components as per B above)<br>b) Compact Utility Tractor Loaders D120, 120R, 220R, 300E, 300R, 320R, 400E, 440R | 24 Months or 2000 Hours, Whichever Comes First<br>a) 72 Months or 2000 Hours, Whichever Comes First<br>b) 24 Months |
| 13) GATOR™ Utility Vehicles | 12 Months or 1000 Hours, Whichever Comes First |
| 14) Except as provided above, all other Implements/Attachments sold separately or purchased on the same Purchase Order as Equipment listed in 9 through 13 | 12 Months |
| 15) All other Turf & Utility Equipment | 24 Months in Private Residential - Personal Use or 12 Months in Any Other Application |

\*\*Implements/Attachments purchased on the same Purchase Order as the Equipment listed will be covered by the Equipment's warranty terms. Implements/Attachments purchased separately will be covered by the warranty term on line 14.

**C. (I) ITEMS COVERED SEPARATELY –** (1) Tires, rubber tracks and batteries; (2) John Deere Hand Held-Portable products; (3) When applicable, a separate emissions warranty statement will be provided by Selling Dealer.

**(II) WHAT IS NOT WARRANTED –** Pursuant to the terms of these warranties, JOHN DEERE IS NOT RESPONSIBLE FOR THE FOLLOWING: (1) Used Equipment; (2) Any Equipment that has been altered or modified in ways not approved by John Deere, including, but not limited to, setting injection pump fuel delivery above John Deere specifications, modifying combine grain tanks, and modifying self-propelled sprayers with unapproved wheels, tracks, tanks or booms; (3) Depreciation or damage caused by normal wear, lack of reasonable and proper

maintenance, failure to follow operating instructions/recommendations; misuse, lack of proper protection during storage, vandalism, the elements or collision or accident; (4) Normal maintenance parts and/or service, including but not limited to, oil, filters, coolants and conditioners, cutting parts, belts, brake and clutch linings; (5) Any Utility Vehicle used for racing or other competitive purpose; (6) Chains on Premium Balers.

**D. SECURING WARRANTY SERVICE –** To secure warranty service the purchaser must, (1) Report the Equipment defect to an Authorized Dealer and request warranty service within the applicable warranty term; (2) Present evidence of the warranty start date with valid proof of purchase; and (3) Make the Equipment available to an Authorized Dealer within a reasonable time.

**E. NO IMPLIED WARRANTY, REPRESENTATION OR CONDITION –** To the extent permitted by law, neither John Deere nor any company affiliated with it makes any warranties, representations, conditions or promises express or implied as to the quality, performance or freedom from defect of the Equipment covered by these warranties other than those set forth above, AND NO STATUTORY OR IMPLIED WARRANTIES OR CONDITIONS OF MERCHANTABILITY OR FITNESS ARE MADE.TO THE EXTENT LEGALLY REQUIRED, ANY IMPLIED WARRANTIES OR CONDITIONS SHALL BE LIMITED IN DURATION TO THE APPLICABLE PERIOD OF WARRANTY SET FORTH ON THIS PAGE. THE PURCHASER'S ONLY REMEDIES IN CONNECTION WITH THE BREACH OR PERFORMANCE OF ANY WARRANTY ON JOHN DEERE EQUIPMENT ARE THOSE SET FORTH ON THIS PAGE. IN NO EVENT WILL THE DEALER, JOHN DEERE OR ANY COMPANY AFFILIATED WITH JOHN DEERE BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES. (Note: Some jurisdictions do not allow limitations on how long an implied warranty lasts or the exclusion or limitation of incidental or consequential damages so the above limitations and exclusions may not apply to you.) In the event the above warranty fails to correct purchaser's performance problems caused by defects in workmanship and/or materials, purchaser's exclusive remedy shall be limited to payment by John Deere of actual damages in an amount not to exceed the amount paid for the Equipment. This warranty gives you specific legal rights, and you may also have other rights which vary from jurisdiction to jurisdiction.

**F. NO DEALER WARRANTY** THE DEALER HAS NO AUTHORITY TO MAKE ANY WARRANTY, REPRESENTATION, CONDITION OR PROMISE ON BEHALF OF JOHN DEERE, OR TO MODIFY THE TERMS OR LIMITATIONS OF THIS WARRANTY IN ANY WAY.

**G.** If further information is desired, contact Selling Dealer or John Deere at 1-866-993-3373 (Agricultural) or 1-800-537-8233 (Turf & Utility Equipment).