UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| LEROY WORKMAN, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. 4:24-cv-04245-SLD-RLH |
| DEERE & COMPANY, | ) ) ) |
| Defendant. | ) |

### ORDER

Before the Court are Defendant Deere & Company's ("Deere") Motion to Dismiss, ECF No. 9, as well as Plaintiff Leroy Workman's Motion for Leave to File Its [sic] Opposition Memorandum to Defendant's Motion to Dismiss, ECF No. 12, and his Motion for Leave to Reply to Defendant's Response to Plaintiff's Motion for Leave to File an Opposition Memorandum to Defendant's Motion to Dismiss, ECF No. 14. For the reasons that follow, Workman's motion to file an untimely opposition memorandum is DENIED, his motion to file a reply is MOOT, and Deere's Motion to Dismiss is GRANTED.

### BACKGROUND[1]

Plaintiff Leroy Workman brings this putative class action suit against Deere "on behalf of himself and all similarly situated persons who purchased or leased any John Deere Compact Utility Tractors sold from November 2017 to July 2024" with the model numbers 1023E, 1025R, and 2025R ("Class Tractors"). Compl. ¶ 2, ECF No. 1. On September 26, 2024, Deere issued a Recall for about 148,000 of the Class Tractors due to a Brake System Defect "in which the front

---

[1] When reviewing a motion to dismiss, the court "accept[s] as true all well-pleaded facts in the complaint and draw[s] reasonable inferences in favor of the plaintiff." *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 523 (7th Cir. 2022). The factual background is drawn from the Complaint, ECF No. 1.

1

bell crank in the brake linkage can fail, thereby causing the tractor to lose braking, resulting in a crash hazard." *Id.* ¶ 4. As part of the Recall, Deere offers to repair the defect and replace the faulty parts for free. If a customer is unable to bring his defective Class Tractor to a Deere-certified mechanic, Deere offers at-home repair. Workman "purchased his 2025R Compact Utility Tractor within the applicable recall period." *Id.* ¶ 15. He brings five claims against Deere: (1) breach of implied warranty of merchantability, (2) unjust enrichment, (3) strict liability for design defect, (4) strict liability for manufacturing defect, and (5) violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301–12.

Workman filed his Class Action Complaint in this Court on December 31, 2024. In its Motion to Dismiss, Deere asserted that this was "Workman's second attempt at bringing this lawsuit," referring to a substantively identical Class Action Complaint that Workman filed in his home state of South Carolina just a couple months prior on October 18, 2024. Mot. Dismiss 1; *see also* Compl., *Workman v. Deere & Co.*, No. 6:24-cv-05950-BHH (D.S.C. Oct. 18, 2024). Workman voluntarily dismissed his suit in the District of South Carolina on December 18, 2024, *see* Not. Voluntary Dismissal, *Workman v. Deere & Co.*, No. 6:24-cv-05950-BHH (D.S.C. Dec. 18, 2024), and then filed his substantively identical Class Action Complaint in the Central District of Illinois less than two weeks later. Deere moved to dismiss this suit on February 12, 2025, *see* Mot. Dismiss, and Workman sought the Court's leave to file a late response on June 13, 2025, *see* Mot. Untimely Opp. Mem., and a reply in support of his motion for leave to file a late response on June 26, 2025, *see* Mot. Reply.

## DISCUSSION

**I.     Workman's Motions to File Untimely Response and Reply**

Workman requests leave of Court to file (1) an untimely response opposing Deere's Motion to Dismiss; and (2) a reply in support of his untimely response.  Deere filed its Motion to Dismiss on February 12, 2025, meaning that Workman's response was due February 26, 2025. *See* Civil LR 7.1(B)(2) (specifying that responses opposing a motion must be filed within 14 days of service of the motion).  Workman filed his Motion for Leave to File Its [sic] Opposition Memorandum to Defendant's Motion to Dismiss nearly four months late on June 13, 2025.

After a filing deadline passes, a court may, "for good cause, grant a post-hoc motion for leave to file if the moving party 'failed to act because of excusable neglect.'" *Christensen v. Weiss*, 145 F.4th 743, 755 (7th Cir. 2025) (quoting Fed. R. Civ. P. 6(b)(1)(B)).  In determining whether a party has demonstrated excusable neglect, the court should consider "the danger of prejudice to the [non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the mov[ing party], and whether the mov[ing party] acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).

Here, Workman's attorney "sincerely apologizes to the Court and to opposing counsel for the untimely filing" and asserts that his "delay was not the result of willful disregard or dilatory intent, but stemmed from not calendaring the deadline properly."  Mot. Untimely Opp. Mem. ¶ 5. He states that he "accepts full responsibility for the oversight and has implemented measures to avoid similar issues in the future."  *Id.* ¶ 6.  Workman's attorney asserts that Deere "will not be unduly prejudiced by the filing of a brief response at this stage of the proceedings."  *Id.* ¶ 8.

Deere opposes Workman's motion and argues that he failed to comply with the Local Rules by: "1) filing the motion months after the deadline had passed; and 2) failing to set forth any basis for the Court to find that denial of the motion would result in substantial injustice." Resp. Opp. Pl.'s Mot. ¶¶ 8–10, ECF No. 13.  Deere additionally argues that, even before his almost four-month delay, Workman "had the benefit of two additional months to consider the arguments Deere raised in [its] motion to dismiss" because it had "filed a nearly identical motion to dismiss in the South Carolina action on December 4, 2024, prior to [Workman]'s voluntary dismissal of that action."  *Id.* ¶ 12 (footnote omitted).

In his proposed Reply, Workman reiterates his same arguments and appears to place the burden on Deere to demonstrate that it experienced actual prejudice from his delay—but this misstates the law.  Reply 2, ECF No. 14-1 ("Defendant has not demonstrated any actual prejudice from permitting Plaintiff to file an opposition.").  "[A]fter the deadline has expired, Rule 6 permits an extension only on a showing of both good cause *and* excusable neglect. . . . The burden is on the movant to show excusable neglect."  *McCann v. Cullinan*, No. 11 CV 50125, 2015 WL 4254226, at *7 (N.D. Ill. July 14, 2015).

Failing to properly calendar a deadline and missing that deadline by nearly four months does not constitute excusable neglect.  Though inadvertence can, in some situations, establish excusable neglect, *see, e.g.*, *Pioneer Inv. Servs. Co.*, 507 U.S. at 394–95, that is not the case here.  The length of delay is significant and the proffered reason for such delay is not compelling.  *See, e.g., McCann*, 2015 WL 4254226, at *8 (finding a delay of three months to be significant); *Postle v. Bath & Body Works, LLC*, No. 13CV50374, 2015 WL 521365, at *3–6 (N.D. Ill. Feb. 9, 2015) (denying motion for extension of time after the plaintiff's counsel filed a response two weeks late and argued that his "busyness" constituted excusable neglect).  Because Workman has

failed to demonstrate excusable neglect for his late filing, his Motion for Leave to File Its [sic] Opposition Memorandum to Defendant's Motion to Dismiss is DENIED and his Motion for Leave to Reply to Defendant's Response to Plaintiff's Motion for Leave to File an Opposition Memorandum to Defendant's Motion to Dismiss is MOOT.

In any event, Workman's concern and desire for the motion to "be considered on the merits with the benefit of full briefing," Mot. Untimely Opp. Mem. ¶ 7, should be allayed by the requirement that courts must address the merits of a motion to dismiss even when functionally unopposed. "Rule 12(b)(6) prevents courts from granting unopposed motions solely because there is no response." *Marcure v. Lynn*, 992 F.3d 625, 633 (7th Cir. 2021). When a plaintiff fails to respond to a motion to dismiss, the court must "look[] to the complaint itself to determine the sufficiency of the pleadings." *Id.* at 633 n.5. "It is the defendant's burden to establish the complaint's insufficiency." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020).

## II.     Choice of Law

Deere contends that, although this case was brought in an Illinois court, South Carolina law governs Workman's state-law claims. Mot. Dismiss 5–6. A federal court exercising diversity jurisdiction, as the Court is here, applies the choice-of-law rules of the state in which it sits. *Sosa v. Onfido, Inc.*, 8 F.4th 631, 637 (7th Cir. 2021). Under Illinois's choice-of-law rules, a court "applies forum law unless an actual conflict with another state's law is shown, or the parties agree that forum law does not apply." *Gunn*, 968 F.3d at 808 (citation omitted). "An actual conflict exists if application of one state's law will yield a different result than the application of another's, that is, if it will affect the outcome of the dispute." *Dancor Constr., Inc. v. FXR Constr., Inc.*, 64 N.E.3d 796, 812 (Ill. App. Ct. 2016). It is Deere's burden, as the

5

party seeking the choice-of-law determination, to demonstrate a conflict between laws. *See Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*, 10 N.E.3d 902, 905 (Ill. 2014).

The predominant difference between South Carolina and Illinois law that Deere points to is: "South Carolina law does not recognize diminution-in-value damages in situations where an alleged product defect has not manifested in the plaintiff's particular product, nor does it recognize inconvenience incurred during a warranty repair as an element of damages." Mot. Dismiss 8–9. Deere cites to *Carlson v. General Motors Corp.*, 883 F.2d 287 (4th Cir. 1989), in which the Fourth Circuit affirmed the district court's application of South Carolina law and dismissal of implied warranty of merchantability claims where the plaintiffs alleged they suffered damages in the form of "lost resale value" and "poor reputation" of the product. *Carlson*, 883 F.2d at 298; *see also Wilson v. Style Crest Prods., Inc.*, 627 S.E.2d 733, 735–36 (S.C. 2006) (holding that the plaintiffs—who "concede[d] that they ha[d] not suffered any personal injuries or physical damage to their homes" but alleged that they "suffered an economic loss by purchasing a defective product"—could not maintain their breach of implied warranty of merchantability claim).

The Court finds that Deere has demonstrated an actual conflict between South Carolina law and Illinois law. In Illinois, "[t]he diminished value of a product is a compensable injury in a breach of warranty claim." *Shoop v. DaimlerChrysler Corp.*, 864 N.E.2d 785, 788 (2007); *see also Schiffner v. Motorola, Inc.*, 697 N.E.2d 868, 874–75 (1998) (noting that Illinois allows "[c]laims for diminished value of an allegedly defective product without the pleading of any damage to the product or person"); *Perona v. Volkswagen of Am., Inc.*, 684 N.E.2d 859, 862 (Ill. App. Ct. 1997) (holding that the plaintiffs whose vehicles never exhibited unintended acceleration suffered a compensable injury based on the allegation that widespread knowledge of

6

the defect led to diminution of the resale value). Because the two states differ on the issue of what types of damages are compensable, the outcome of this suit would be different were the Court to apply Illinois law instead of South Carolina law. *See Bridgeview Health Care Ctr.*,10 N.E.3d at 905 ("A choice-of-law determination is required only when a difference in law will make a difference in the outcome." (quotation marks omitted)).

Illinois follows the "most significant relationship test" from the Second Restatement of Conflict of Laws when deciding choice-of-law issues governing contractual claims, including breach of warranty. *Gunn*, 968 F.3d at 808–09; Restatement (Second) of Conflict of Laws § 188 (A.L.I. 1971). For tort claims, Illinois courts apply "a *strong* presumption . . . that the law of the place of injury" governs "unless another state has a more significant relationship with the occurrence and with the parties with respect to the particular issue." *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 903–05 (Ill. 2007) (quotation marks omitted); *see also* Restatement (Second) of Conflict of Laws § 146 cmt. e (A.L.I. 1971) (where conduct and injury occur in different states, "the local law of the state of injury will usually be applied to determine most issues involving the tort").

Here, the Court agrees with Deere that South Carolina is the state with the most significant relationship to this suit: South Carolina is where Workman is domiciled, where he presumably purchased and used his tractor, and where any alleged injury he experienced occurred. Mot. Dismiss 5–6; *Gray v. Abbott Lab'ys, Inc.*, No. 10 cv 6377, 2011 WL 3022274, at *3 (N.D. Ill. July 22, 2011). The Seventh Circuit has stated in no uncertain terms that "[i]f recovery for breach of warranty or consumer fraud is possible, the injury is decidedly where the *consumer* is located, rather than where the seller maintains its headquarters." *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1017 (7th Cir. 2002); *see also In re Rust-Oleum*

7

*Restore Mktg., Sales Pracs. & Prods. Liab. Litig.*, 155 F. Supp. 3d 772, 786 (N.D. Ill. 2016) ("[U]nder Illinois choice-of-law rules, the place of purchase and injury governs breach of warranty claims."). The Court therefore will apply South Carolina substantive law to Workman's claims.

## III. Standing

Deere moves to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and puts forth several arguments for dismissal that fall under the umbrella of standing, including: (1) Workman has failed to allege a sufficient injury-in-fact and therefore lacks Article III standing; and (2) Deere's Recall of the defective Class Tractors renders Workman's claims prudentially moot. Mot. Dismiss 7–13.

A motion to dismiss under Rule 12(b)(1) asserts that the court lacks subject-matter jurisdiction. *Mohammad v. IndyMac Bank, F.S.B./One W. Bank, F.S.B.*, No. 16 C 7241, 2018 WL 1252112, at *3 (N.D. Ill. Mar. 12, 2018). "[F]ederal courts have subject-matter jurisdiction only if constitutional standing requirements also are satisfied," *Collier v. SP Plus Corp.*, 889 F.3d 894, 896 (7th Cir. 2018), and "[t]he party invoking federal jurisdiction bears the burden of establishing the[] elements" of Article III standing, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

Deere argues that, even taking the Complaint's well-pleaded factual allegations as true, Workman has not suffered a cognizable injury-in-fact and therefore lacks standing to sue. Mot. Dismiss 7–9. The Court therefore construes Deere's arguments as a facial attack on Workman's standing. "A facial attack tests whether the allegations, taken as true, support an inference that the elements of standing exist . . . ." *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007 (7th Cir. 2021) (quotation marks omitted). When a defendant

8

challenges the legal sufficiency of the allegations concerning subject-matter jurisdiction, the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 691 (7th Cir. 2015).

To establish Article III standing, a plaintiff must show (1) an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," (2) a "causal connection between the injury and the conduct complained of," and (3) a likelihood, as opposed to mere speculation, that the injury "will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61 (alterations and quotation marks omitted).

a. **Standing On His Own Behalf**[2]

Deere first argues that Workman "does not allege sufficient facts to plausibly allege that his particular tractor is actually subject to the recall" because the Recall only affected tractors with specific serial numbers and Workman does not allege the year of manufacture or the serial number of the tractor he purchased. Mot. Dismiss 7–8. Though Workman's allegation that he "purchased his 2025R Compact Utility Tractor within the applicable recall period," Compl. ¶ 15, is devoid of detail, other allegations in the Complaint support the conclusion that Workman's tractor was subject to the Recall. For example, Workman alleges that "[f]or all intents and

---

[2] Deere additionally argues that Workman lacks standing to represent a nationwide class because his individual claims "will ultimately be resolved by reference to the laws of the State of South Carolina" whereas the claims of any putative class members who are not South Carolina residents "must be resolved by reference variously to the laws of the other 49 states." Mot. Dismiss 12–13. Contrary to Deere's framing, the concern that a class action would be unwieldy and difficult to manage is distinct from standing and is more appropriately raised in a challenge to class certification. *See Arreola v. Godinez*, 546 F.3d 788, 795 (7th Cir. 2008) ("[T]he inherent problem with the idea of 'standing to bring a class action' is that it conflates the standing inquiry with the inquiry under Rule 23 about the suitability of a plaintiff to serve as a class representative." (alterations and quotation marks omitted)); *see also Williams v. State Farm Mut. Auto. Ins. Co.*, 678 F. Supp. 3d 980, 1012–14 (N.D. Ill. 2023) (declining to dismiss class claims where the defendant "attack[ed the p]laintiffs' adequacy to represent unnamed class members from other states," reasoning that that "argument should wait until class certification"). Because Workman has not yet sought to certify the putative class and because the Court finds that Workman fails to state an individual claim, it need not address Deere's arguments regarding Workman's adequacy as a class representative. *Cf. Curtis v. 7-Eleven, Inc.*, No. 21-cv-6079, 2022 WL 4182384, at *6 (N.D. Ill. Sept. 13, 2022) ("[The plaintiff] brings a putative class action, but she can't represent the class if she suffered no injury.").

purposes, [his] tractor is now a notoriously unsafe tractor that has trouble stopping," *id.* ¶ 53, and that he "purchased a Class tractor that contained the same Brake System Defect found in all other Class Tractors," *id.* ¶ 36. Drawing all reasonable inferences in Workman's favor—as it must at the motion-to-dismiss stage—the Court finds that Workman plausibly alleged that his tractor is subject to the Recall.

Next, Deere argues that Workman "has failed to plead cognizable damages because South Carolina law does not recognize diminution-in-value damages in situations where an alleged product defect has not manifested in the plaintiff's particular product, nor does it recognize inconvenience incurred during a warranty repair as an element of damages." Mot. Dismiss 8. But Deere wrongly "conflat[es] the concepts of *injury* and *damages*." *In re: Sears, Roebuck & Co. Front-loading Washer Prods. Liab. Litig.*, No. 06 C 7023, 2016 WL 4765679, at *19 (N.D. Ill. Sept. 13, 2016), *rev'd and remanded*, 867 F.3d 791 (7th Cir. 2017) (emphasis added). "Strictly speaking, injury under Article III is distinct from actual damages," *Curtis v. 7-Eleven, Inc.*, No. 21-cv-6079, 2022 WL 4182384, at *17 (N.D. Ill. Sept. 13, 2022)—injury is an indispensable component of standing, without which a federal court has no subject-matter jurisdiction, whereas damages are generally an element of a particular legal claim.

Deere's argument regarding Workman's standing relies on the specifics of South Carolina state law, but "the Article III requirement of remediable injury in fact . . . has nothing to do with the text of the statute relied upon." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 n.2 (1998); *see also Liston v. King.com, Ltd.*, 254 F. Supp. 3d 989, 1000 (N.D. Ill. 2017) ("The question of what legal theories [a plaintiff] may advance as bases for recovering damages for his injury does not implicate Article III standing; the availability of any particular legal theory presents a question of substantive law.").

Here, Workman plausibly alleges an injury-in-fact by alleging that (1) he paid more for his tractor than he would have if he had known of the Brake System Defect, (2) his overpayment was caused by Deere's misconduct, and (3) his overpayment injury can be redressed by a judicial decision in his favor. *See In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 809–10 (N.D. Ill. 2017) (finding allegations that the defendants' misconduct caused the plaintiffs to pay inflated prices for goods sufficient to support standing). "For standing purposes, a loss of even a small amount of money is ordinarily an 'injury,'" *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017), which is why "[a] financial injury such as overpayment or diminished value is sufficient to establish standing," *Rivera v. Am. Honda Motor Co.*, No. 24 CV 12883, 2025 WL 1309536, at *3 (N.D. Ill. May 5, 2025); *In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 751 (7th Cir. 2011) ("The plaintiffs' loss is financial: they paid more for the toys than they would have, had they known of the risks the beads posed to children. A financial injury creates standing."); *Castillo v. Unilever U.S., Inc.*, No. 20 C 6786, 2022 WL 704809, at *3 (N.D. Ill. Mar. 9, 2022) ("Although Plaintiffs do not allege that they suffered physical injury, they do allege a financial loss analogous to that alleged in *Aqua Dots*—specifically, that they would not have bought the TRESemmé products, or would have paid less for them, had they known of the alleged defects . . . ."). *But cf. Remijas*, 794 F.3d at 695 (recognizing that, at least within the Seventh Circuit, overpayment as an Article III injury has not been extended beyond claims against defective or dangerous products).

At this early stage in the litigation, Workman has plausibly alleged that he suffered an injury-in-fact, and he therefore has standing to sue on his own behalf. In so deciding, the Court emphasizes that "the standing inquiry is distinct from the determination of whether [Workman's] claims have merit," *In re Evenflo Co.*, 54 F.4th at 34–35, because "standing in no way depends

11

on the merits of the plaintiff's contention that particular conduct is illegal," *Warth v. Seldin*, 422 U.S. 490, 500 (1975).

### b. Prudential Mootness

Deere argues that this case should be dismissed on prudential mootness grounds because its Recall, overseen by the Consumer Product Safety Commission ("CPSC"), renders Workman's alleged injury resolved and there is no longer a case or controversy for this Court to adjudicate. Mot. Dismiss 9–12 (citing *Ward-Richardson v. FCA US LLC*, 690 F. Supp. 3d 1372, 1380 (N.D. Ga. 2023) (dismissing claim for diminished-value damages after finding that the defendant's recall provided the precise relief the plaintiffs were seeking); *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1211 (10th Cir. 2012) (finding case to be prudentially moot after the defendant initiated nationwide recall); *Sharp v. FCA US LLC*, 637 F. Supp. 3d 454, 463–69 (E.D. Mich. 2022) (dismissing case on prudential mootness grounds after the defendant initiated recall)).

The cases cited by Deere are not binding on this Court and the Court does not find them persuasive. In *Ward-Richardson*, for example, the court found that the defendant's product recall "promise[d] to remove the very defect that form[ed] the basis of [the p]laintiffs' diminished-value claim." 690 F. Supp. 3d at 1379. But, here, Workman's claim is not merely for the present diminished value of his tractor. He also alleges injury in the form of financial and temporal inconvenience related to repairing the faulty system, Compl. ¶ 92, and depressed resale value for the tractor even after the repairs, *id.* ¶ 21.

The court in *Rivera v. American Honda Motor Co.*, No. 24 CV 12883, 2025 WL 1309536, at *4 (N.D. Ill. May 5, 2025), came to a similar conclusion when tasked with evaluating the defendant's prudential mootness argument:

12

> Though a close call, and bearing in mind the Court's obligation to use caution to avoid deciding merits questions when evaluating challenges to jurisdiction, it declines to dismiss the monetary damages claims on standing grounds. [The plaintiff] alleges injury in the form of overpayment at the time of purchase; *she maintains that the recall did not fully remediate that loss*; and she points to evidence developed during expert discovery that supports a diminished value at the time of purchase.

*Id.* (emphasis added) (internal citations omitted). Like in *Rivera*, Workman maintains that the recall cannot fully remediate his loss because his injuries go beyond owning a tractor with a Brake System Defect. As a result, the Court declines to dismiss this suit on discretionary prudential grounds based on Deere's Recall.

## IV. Failure to State a Claim

In addition to its arguments under Rule 12(b)(1), Deere presents several bases for dismissal under Rule 12(b)(6): (1) Workman has failed to state a claim for breach of implied warranty of merchantability because Deere disclaimed the warranty and because his factual allegations do not amount to a breach; (2) Workman has failed to state a claim for unjust enrichment because he does not plausibly allege that he conferred a benefit upon Deere and because he has adequate remedies at law; (3) Workman has failed to state a claim for strict products liability because his claims for design defect and manufacturing defect are barred by the economic loss doctrine; and (4) Workman has failed to state a claim for violation of the MMWA because he failed to comply with the statute's pre-suit notice-and-opportunity-to-cure provisions. Mot. Dismiss 14–25.

Rule 12(b)(6) provides for dismissal when a complaint "fail[s] to state a claim upon which relief can be granted." "The purpose of a motion to dismiss is to challenge the sufficiency of the complaint, not to decide its merits." *Dutch Valley Growers, Inc. v. Rietveld*, No. 16-2085, 2016 WL 10789393, at *2 (C.D. Ill. Aug. 29, 2016). At the motion to dismiss stage, the key inquiry is whether the complaint is "sufficient to provide the defendant with 'fair notice' of the

13

plaintiff's claim and its basis." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). "[D]etailed factual allegations are unnecessary," *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016), but the complaint must contain "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

When deciding on a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences from those factual allegations in the plaintiff's favor. *Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014). "[L]egal conclusions and conclusory allegations merely reciting the elements of the claim," however, "are not entitled to [the] presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### a. Count I: Breach of Implied Warranty of Merchantability

Workman alleges that "[Deere] breached the implied warranty of merchantability because the Class Tractors are not fit for their ordinary purpose of providing reasonably reliable and safe operation" and "[Deere] did not indicate that the Class Tractors would contain the Brake System Defect." Compl. ¶ 46. Deere argues that Workman "has not alleged facts that amount to a breach" of the implied warranty of merchantability because he "does not allege that the recall condition affecting the front bell crank manifested in his particular tractor" nor does he allege that he suffered any injury to his person or property. Mot. Dismiss 16.[3] The Court agrees.

---

[3] Deere additionally argues that this claim should be dismissed because Deere disclaimed all implied warranties in its express warranty. Mot. Dismiss 14–15. Deere attaches a document entitled "Warranty for New John Deere Agricultural Equipment and Limited Warranty for New Turf & Utility Equipment (US & Canada Only)" as an

14

Under South Carolina law, to state a claim for breach of the implied warranty of merchantability, a plaintiff must allege:

> (1) a merchant sold goods; (2) the goods were not "merchantable" at the time of sale; (3) the plaintiff or his property were injured by such goods; (4) the defect or other condition amounting to a breach of the implied warranty of merchantability proximately caused the injury; and (5) the plaintiff so injured gave timely notice to the seller.

*Grubbs v. Wal-Mart Stores, Inc.*, 514 F. Supp. 3d 820, 824 (D.S.C. 2021). To be "merchantable," goods must be "fit for the ordinary purposes for which such goods are used." *Red Feather Golf & Soc. Club, LLC v. Sod Sols., Inc.*, 783 F. Supp. 3d 942, 954 (N.D. Tex. 2025) (quoting S.C. Code Ann. § 36-2-314(2)(c)). "So defined, 'merchantability' clearly does not encompass consumer expectations that a product will hold its value." *Carlson*, 883 F.2d at 297–98.

Here, the Court finds that Workman's claim fails for lack of injury. Although Workman's alleged financial injury is sufficient to establish Article III standing, he still must show that his alleged injury is "compensable, as a matter of [South Carolina] state law, to avoid dismissal on the merits." *Castillo*, 2022 WL 704809, at *4 (quotation marks omitted). Workman does not allege that he suffered personal injury, nor does he allege that any of his property—including his tractor—was damaged. Workman alleges that he "suffered and continue[s] to suffer financial damage and injury," that he "suffered economic loss in reference to the value of his tractor" and that he "suffered damages because [he] has been inconvenienced"

---

exhibit to its Motion to Dismiss. Warranty, Mot. Dismiss Ex. 1, ECF No. 9 at 29–30. At the bottom of each page, the Warranty states it is "Effective November 1, 2020." *Id.* Deere argues that the Court can consider its Warranty in resolving the Motion to Dismiss because the Warranty "is indispensably incorporated by reference into the Complaint by virtue of [Workman]'s allegations, in particular the allegations of Count V," Workman's MMWA claim. Mot. Dismiss 14 n.4. Deere is correct that Workman references express and written warranties, *see* Compl. ¶ 90, but the warranties referenced by Workman are not necessarily the same as the Warranty provided by Deere. Because the Court dismisses this claim on other grounds, it declines to analyze whether it is appropriate to consider the Warranty without converting the Motion to Dismiss into a Motion for Summary Judgment. *See* Fed. R. Civ. P. 12(d).

and "will spend hours tending to [the] Recall." Compl. ¶¶ 52–55.[4] But none of these alleged injuries are compensable under South Carolina law. *See, e.g.*, *Cannon v. Pulliam Motor Co.*, 94 S.E.2d 397, 401 (S.C. 1956) (holding, with respect to a breach of warranty claim, that the plaintiff's "inconvenience" in traveling back and forth to the car dealership was not an element of damages); *Carlson*, 883 F.2d at 297–98 (holding that the implied warranty of merchantability does not encompass damages for "poor reputation" or "diminished resale value"). "[T]he "general rule" is that "the proper measure of damages [for a breach of warranty claim] . . . is the difference between the actual value of [a good] in its defective condition at the time of sale and its value if it had been as warranted." *Cannon*, 94 S.E.2d at 401. Absent allegations that a manufacturing defect manifested in his tractor, Workman fails to plead any difference between the value of his tractor as warranted and the actual value of his tractor in its current state.

Because Workman has not alleged damages that are compensable under South Carolina state law, his claim for breach of implied warranty of merchantability is DISMISSED.

### b. Count II: Unjust Enrichment

Workman alleges that he "conferred benefits on [Deere] in the form of monies paid to purchase [Deere]'s worthless Class Tractors," that Deere obtained that benefit "unlawfully . . . by selling and accepting compensation for the defective Class Tractors without providing working brakes" and that it is therefore "unjust and inequitable for [Deere] to retain the benefit without paying the value thereof." Compl. ¶¶ 58, 60. Deere argues that Workman's unjust enrichment claim should be dismissed because he does not allege that he purchased his tractor *from Deere*

---

[4] The Court is perplexed as to how Workman would even demonstrate his inconvenience damages in light of the fact that he alleges that Deere provides a "free fix and repair" and even "offer[s] an at[-]home repair for those who cannot transport their tractor to a dealer location." Compl. ¶¶ 19, 24.

16

and because he has adequate remedies at law in the form of the Warranty and the Recall. Mot. Dismiss 17–20.

To state a claim for unjust enrichment under South Carolina law, a plaintiff must allege: "(1) he conferred a non-gratuitous benefit on the defendant; (2) the defendant realized some value from the benefit; and (3) it would be inequitable for the defendant to retain the benefit without paying the plaintiff for its value." *Inglese v. Beal*, 742 S.E.2d 687, 691 (S.C. Ct. App. 2013). "The South Carolina Supreme Court defined benefits as 'goods or services.'" *Quintech Sec. Consultants, Inc. v. Intralot USA, Inc.*, No. 2:11-cv-01689-PMD, 2011 WL 5105446, at *4 (D.S.C. Oct. 27, 2011) (quoting *Gignilliat v. Gignilliat, Savitz & Bettis, L.L.P.*, 684 S.E.2d 756, 764 (2009)). "Recovery under a theory of unjust enrichment is available only where the rights and responsibilities at issue are not governed by an express contract." *Palmetto Health Credit Union v. Open Sols. Inc.*, No. 3:08-cv-3848-CMC, 2010 WL 2710551, at *4 (D.S.C. July 7, 2010), *clarified on denial of reconsideration*, No. 3:08-cv-3848-CMC, 2010 WL 3521609 (D.S.C. Sept. 7, 2010).

Workman appears to allege that there is an express contract between Deere and himself, meaning that he cannot pursue an unjust enrichment claim. *See* Compl. ¶ 90 ("[Deere]'s express warranties are written warranties within the meaning of the MMWA."); *Besley v. FCA US, LLC*, No. 1:15-cv-01511-JMC, 2016 WL 109887, at *3 (D.S.C. Jan. 8, 2016) ("In South Carolina, a party is generally precluded from pursuing a claim for . . . unjust enrichment . . . where a valid contract governs the subject matter in dispute."). Accordingly, his unjust enrichment claim is DISMISSED.

### c. Counts III–IV: Strict Liability

Workman brings two strict liability claims—one for design defect and, in the alternative, another for manufacturing defect. Compl. ¶¶ 65–83. Workman alleges that he suffered (1) economic damages because his tractor is now "unsafe and relatively worthless when compared to the purchase price," and (2) non-economic damages in the forms of "emotional distress, inconvenience, loss of enjoyment, past and future." Compl. ¶ 71; *see also id.* ¶ 83 ("Given the loss of value and lack of safety, Plaintiff and the Class Members have been damaged and will continue to suffer damages."). Deere argues that the strict product liability claims must be dismissed under South Carolina's economic loss rule. Mot. Dismiss 20–21. Deere additionally argues that Workman has not adequately pleaded facts to support his claim for non-economic damages, including "emotional distress, inconvenience, [and] loss of enjoyment, past and future," Compl. ¶ 71(b). Mot. Dismiss 21. The Court agrees.

Under South Carolina law, the economic loss doctrine "bars tort claims and limits a plaintiff's recovery to those contractual remedies provided by the Uniform Commercial Code where the suit arises out of a commercial transaction and the loss incurred is only to the product itself." *Myrtle Beach Pipeline Corp. v. Emerson Elec. Co.*, 843 F. Supp. 1027, 1049 (D.S.C. 1993), *aff'd*, 46 F.3d 1125 (4th Cir. 1995). The Supreme Court of South Carolina recently explained:

> The purpose of the economic loss rule is to limit the remedies the buyer of a product has if the sole harm is to the product itself. When a product fails and causes injury only to itself, the buyer's loss is only "economic"—for no personal injury has occurred, and no physical damage has been caused to his other property or the property of third parties.

*Carroll v. Isle of Palms Pest Control, Inc.*, 918 S.E.2d 532, 535 (S.C. 2025); *see also Kennedy v. Columbia Lumber & Mfg. Co.*, 384 S.E.2d 730, 734 (S.C. 1989) ("The 'economic loss rule' simply states that there is no tort liability for a product defect if the damage suffered by the

18

plaintiff is only to the product itself.  In other words, tort liability only lies where the damage done is to other property or is personal injury.").

Here, Workman alleges that he sustained economic damages because he is "now stuck" with a tractor that is "unsafe and relatively worthless when compared to the purchase price." Compl. ¶ 71(a).  Because the only alleged injury here is to the product itself, Workman cannot recover economic damages pursuant to the economic loss rule.

As for Workman's non-economic damages, Workman cannot recover because South Carolina law "requires that the defect cause the user 'physical harm,'" *Bray v. Marathon Corp.*, 553 S.E.2d 477, 481 (S.C. Ct. App. 2001), (quoting S.C. Code Ann. § 15-73-10 (1976)), *aff'd in part, rev'd in part*, 588 S.E.2d 93 (S.C. 2003), but Workman has not alleged any physical injuries.  *See Padgett v. Colonial Wholesale Distrib. Co.*, 103 S.E.2d 265, 270 (S.C. 1958) ("[U]nder the law of [South Carolina,] damages cannot be recovered for mental suffering in the absence of bodily injury.").

Because Workman's alleged economic damages are barred by South Carolina's economic loss rule and because he failed to allege any physical harm, his strict products liability claims for design defect and manufacturing defect are DISMISSED.

### d. Count V: Magnuson-Moss Warranty Act

Deere argues that Workman's MMWA claim should be dismissed because Workman did not comply with the statute's "pre-suit notice-and-opportunity-to-cure requirements."  Mot. Dismiss 22–25.  The Court agrees that this claim should be dismissed but for a different reason: the MMWA "operates *in conjunction with state law* to regulate the warranting of consumer products," *Carlson*, 883 F.2d at 291 (quotation marks omitted), meaning that deciding if a plaintiff's "MMWA claim is cognizable depends on whether the state law warranty claims are

19

cognizable," *Sadler v. Pella Corp.*, 146 F. Supp. 3d 734, 760 (D.S.C. 2015). Because the Court found that Workman failed to state a breach of warranty claim under South Carolina state law, his MMWA claim also fails and must be DISMISSED.

## CONCLUSION

For the foregoing reasons, Plaintiff Leroy Workman's Motion for Leave to File Its [sic] Opposition Memorandum to Defendant's Motion to Dismiss, ECF No. 12, is DENIED, and his Motion for Leave to Reply to Defendant's Response to Plaintiff's Motion for Leave to File an Opposition Memorandum to Defendant's Motion to Dismiss, ECF No. 14, is MOOT. Defendant Deere & Company's Motion to Dismiss, ECF No. 9, is GRANTED. The Complaint, ECF No. 1, is DISMISSED WITHOUT PREJUDICE. Workman is granted leave to file an amended complaint, if he so desires, to address the deficiencies identified in this Order by October 14, 2025. Failure to file an amended complaint will result in dismissal of this suit.

Entered this 30th day of September, 2025.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE